IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERGIN HAZERCI | : | CIVIL ACTION |
| v. | : | |
| | : | No. 08-1092 |
| TECHNICAL EDUCATION SERVICES, INC., | : | |

**MEMORANDUM**

Ludwig, J. March 4, 2010

This is a religious and national origin discrimination case, and jurisdiction is federal question. 28 U.S.C. § 1331.

According to the complaint, beginning in July 2004, plaintiff Ergin Hazerci attended an aviation maintenance school operated by defendant Technical Education Services, Inc. until October 2005, when he was expelled. His expulsion is alleged to have violated the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951 et seq., and the Pennsylvania Fair Education Opportunities Act, 24 Pa.C.S. § 5001, et seq., assertedly because of discrimination based on plaintiff's religion (Muslim) and national origin (Turkish). Defendant moves for summary judgment[1] on three grounds: 1) as to the religious discrimination claim, plaintiff did not exhaust his administrative remedies; 2) a prima facie case of discrimination based on national origin has not been made out; and 3) a triable issue as to defendant's proffered reason for the expulsion - destruction of school property - has not

---

[1] "Summary judgment is appropriate if and only if, after the evidence taken as a whole is construed in the light most favorable to the non-moving party, there remains no genuine issue of material fact." Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776, – F.3d –, 2010 WL 521102, at *1 (3d Cir., Feb. 16, 2010) (citations omitted)

been presented. The motion must be granted, and judgment will be entered in favor of defendant and against plaintiff.

The summary judgment record[2] establishes the following. In July 2004, plaintiff enrolled in defendant's Aviation Institute of Maintenance - Philadelphia. By signing the Aviation Institute of Maintenance Student Enrollment Agreement and the AMP Orientation Checklist, plaintiff acknowledged receipt of the school catalog. Exhibits "F" and "G" to defendant's motion. The catalog states: "Aviation Institute of Maintenance reserves the right to terminate a student's enrollment for excessive absenteeism, destruction or theft of school property . . . . or the failure to follow school rules and policies." School catalog, Exhibit "H" to defendant's motion, p. 34. Additionally, as plaintiff acknowledges, he was given a memo from Antoinette Levitt, the school's then director, governing student conduct. Deposition transcript of Ergin Hazerci, 51-52; April 13, 2004 memo, Exhibit "I" to defendant's motion. The memo states that certain "activities are strictly prohibited" - including "[d]amaging school property" - and could result in expulsion. Exhibit "I" to defendant's motion.

Plaintiff admits his attendance at AMP was poor - he was as much as 15 minutes late for class as often as every other day. Hazerci N.T. at 63-65, 67-8. His tardiness resulted in clashes with at least one instructor - Daniel Mecco. Plaintiff says that Mecco treated him unfairly - exaggerating his lateness and ignoring his requests for help. Id. at 111-13. On October 26, 2005, when admittedly late for Mecco's class, id. at 116, plaintiff pounded on

---

[2] The summary judgment record consists of the pleadings, documents produced by both parties, depositions transcripts, and the declaration of former School Director Antoinette Levitt.

2

the locked door and another instructor let him in. Mecco advised plaintiff that he would not be allowed to attend class because of his lateness.[3] Nevertheless, plaintiff entered the classroom - but then left in order to avoid a confrontation with another student. As he did so, plaintiff flung open the classroom door and "put a hole in the wall" according to someone present at the time. Deposition transcript of David Thomas, at 36, 46, Exhibit "L" to defendant's motion; photos of damage to wall, Exhibit "M" to defendant's motion.

The next day, director Levitt advised plaintiff he was being expelled from AMP for damaging school property and gave him a letter to that effect. Hazerci N.T., at 119, 122; Levitt Declaration, 8; October 27, 2005 letter, Exhibit "N" to defendant's motion. Levitt had not consulted with anyone regarding her decision to expel plaintiff. Levitt Declaration, 9.

Plaintiff admits to damaging school property, but contends he was expelled because of his religion and national origin. Other non-Muslim and non-Turkish students, he maintains, were habitually late to Mecco's class and were not expelled; Mecco singled plaintiff out for being late. Mecco also made discriminatory comments directed to or about plaintiff - "why don't you go back to where you're from." Hazerci N.T.; Thomas N.T.; Deposition transcript of Akin Imojimbo.

While the PHRC charge sets forth a claim for national origin discrimination, it does not mention religious discrimination. PHRC Charge, Exhibit "O" to defendant's motion.

---

[3] Student attendance is surveilled by the Federal Aviation Administration, and AMP is subject to sanctions if it does not enforce FAA and AMP regulations regarding attendance. Instructors take attendance seriously, and lock classroom doors to monitor student attendance. Levitt Declaration, 6, Exhibit "B".

3

"[A] plaintiff who wishes to bring a PHRA claim in civil court must first file an administrative complaint with the PHRC." Tlush v. Manufacturers Resource Ctr., 315 F. Supp.2d 650, 656 (E.D. Pa. 2002), citing Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). "Plaintiffs who fail to exhaust administrative remedies with the PHRC are barred from judicial remedies under the PHRA." Id. The PHRC's investigatory findings do not speak of religion. PHRC investigatory findings, Exhibit "P" to defendant's motion. As plaintiff concedes, his complaint in this action does not allege discrimination based on religion. Complaint, docket no. 1.[4] The religious discrimination claim, therefore, is not administratively exhausted and must be dismissed.

As to the national origin claim, inasmuch as there is no direct evidence of discrimination, the McDonnell Douglas burden-shifting analysis controls.[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Sarullo v. United Postal Service, 352 F.3d 789, 797-98 (3d Cir. 2003). Under this analysis, plaintiff bears the initial burden of establishing a prima facie case. Fuentes v. Perkasie, 32 F.3d 759, 763 (3d Cir. 1994). If plaintiff does so, the burden shifts to defendant to "articulate some legitimate,

---

[4] Plaintiff: "Any rationale [sic] investigation by the PHRC would or should have examined the potential claim of religious discrimination in such situations, especially where 99% of Turks are Muslims and Mecco is obviously not Muslim. To hold otherwise, would unjustly penalize Plaintiff for an ineffective PHRC worker not thorough in drafting the 'Charge.'" Plaintiff's memorandum at 7. However, this does not relieve plaintiff of the responsibility to present the claim to the PHRC and does not produce a triable issue as to exhaustion.

[5] Shamonsky v. Saint Luke's School of Nursing, 2008 WL 724615 (E.D. Pa., Mar. 17, 2008), citing Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) ("the analysis for claims under [federal antidiscrimination laws] is the same for claims under the PHRA and the PFEOA.").

nondiscriminatory reason for" plaintiff's expulsion. McDonnell Douglas, supra, at 802; Fuentes, supra, at 763. Once this burden is satisfied, it shifts back to plaintiff to establish that defendant's proffered reason was merely a pretext for discrimination and was not the real reason for the unfavorable action. McDonnell Douglas, supra, at 804.

Here, according to defendant, plaintiff has not stated a prima facie case because 1) he has not shown that similarly situated non-Turkish and non-Muslim students were treated differently from him, and 2) because he cannot point to evidence that raises an inference of discrimination.[6] As to the first, the complaint alleges that while "other students not of Turkish national origin were late repeatedly, none were subjected to fabricated disciplinary actions, as was plaintiff." Complaint, 7. Plaintiff, however, was expelled for damaging school property, not for being late. He does not identify any student who damaged school property and was not expelled. In contrast, defendant's evidence was that an American student who was expelled for, inter alia, "disruptive behavior and destruction of property," and that two other American students were expelled for other violations of school policy. Exhibits "Q," "R," "S," and "T" to defendant's motion. Plaintiff, therefore, has not shown that similarly situated non-Turkish or non-Muslim students were treated differently from him.

As to other evidence, the deposition testimony of plaintiff and of two of his classmates

---

[6] To state a prima facie case, plaintiff must show that "(1) []he is a member of a protected class; (2) []he suffered an adverse action at the hands of the defendants in the pursuit of [his] education; (3) []he was qualified to continue in [his] pursuit of [his] education; and (4) []he was treated differently from similarly situated students who are not members of the protected class. Manning v. Temple, 2004 WL 3019230, at *5 (E.D. Pa., Dec. 30, 2004), quoting Bell v. Ohio State Univ., 351 F.3d 240, 252-53 (6th Cir. 2003)

contain three instances of purportedly discriminatory comments made by his instructor Mecco. Six months before he was expelled, Mecco is alleged to have told plaintiff to go back "where he came from originally," Hazerci N.T., 75-76, 21-22; on plaintiff's last day of class, Mecco said "go back where you came from," Iwojimbo N.T., 28-31; Mecco used the phrase "off the boat," though not directed at plaintiff alone, Thomas N.T., 66. The only individual employed by defendant to whom plaintiff attributes discriminatory comments or actions was Mecco. Hazerci N.T., 86, 132.

However, the expulsion decision-maker was the school's director, Levitt. Id., 115. No causal nexus has been shown to exist, directly or indirectly, between the alleged discrimination and the expulsion. Iyer v. Everson, 238 Fed. Appx. 834, 836 (3d Cir. 2007) ("[Plaintiff] was required to establish some causal nexus between his membership in a protected class and the decision not to hire him."), citing Sarullo v. United States Postal Service, 352 F.3d 789 (3d Cir. 2003), cert. denied, 541 U.S. 1064 (2004) (to establish a claim for discrimination, plaintiff "must establish some causal nexus between his membership in a protected class and the decision to" expel him.); Adeni v. Vertex, Inc., 2007 WL 2728845, T *5, *7 (E.D. Pa., Sept. 18, 2007), citing Boyd v. State Farm Ins., 158 F.3d 326, 330 (5th Cir. 1998) (granting summary judgment to defendant because "absent a causal link between the references and the conduct complained of, such epithets become stray remarks that cannot support a discrimination verdict.").

The evidence that plaintiff was treated differently because of his national origin is lacking; therefore, he cannot be said to have proffered a prima facie case. Moreover, he has

6

not created a triable issue that the school's articulated reason for the expulsion is pretextual. As a result, defendant's summary judgment motion must be granted.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.